IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

HOLTZEN V. HOLTZEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TRICIA L. HOLTZEN, APPELLEE,

V.

MARK B. HOLTZEN, APPELLANT, AND CITIZENS STATE BANK ET AL., APPELLEES.

Filed January 28, 2025.    No. A-23-1025.

Appeal from the District Court for Thayer County: JULIE D. SMITH, Judge. Affirmed.

Brett McArthur for appellant.

Alex M. Lierz, of Nebraska Legal Group, for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

MOORE, Judge.

## INTRODUCTION

Mark B. Holtzen appeals from the amended decree of dissolution entered by the District Court for Thayer County, which dissolved his marriage to Tricia L. Holtzen. Mark assigns error to the court's valuation of his firearms and the amount of the equalization payment he is required to make to Tricia. He also assigns as error the award of alimony to Tricia. Finding no abuse of discretion, we affirm.

## BACKGROUND

Mark and Tricia were married in May 2006. Three children have been born during the marriage; their custody, parenting time arrangements, and support orders are not at issue in this appeal, therefore, we need not discuss those matters further.

Tricia filed a complaint for dissolution of marriage on June 1, 2020, in which she sought legal and physical custody of the children, child support, division of the parties' property and debts,

alimony, attorney fees, and other relief. A significant amount of activity occurred in the case between the time the complaint was filed and the entry of the amended decree concerning custody, child and spousal support, and property matters including a third-party partition action involving Mark's parents brought in this proceeding. However, given the limited issues on appeal, we need not detail all of this activity other than discussed below in regard to the assigned errors.

Trial was held on July 6 and 7, 2023. Both parties testified, along with Tricia's mother and a neighbor, and numerous exhibits were stipulated into evidence.

Tricia obtained a bachelor's degree in human services before the parties' marriage. After the parties married, Tricia worked at a boys' home for a few months. When she became pregnant with their oldest child in the summer of 2006, Mark asked her to leave that job. Tricia did not work outside the home while the three children were young.

Tricia returned to work full-time in 2014 at the local school district, working with a "behavioral child." Shortly after beginning this employment, she and a paraprofessional were injured when this child acted out. Tricia sustained a torn labrum in her hip. After this, she could not sit or stand for long periods of time. The school district decided to transfer the child and Tricia was let go. Tricia was required to have hip surgery and she received workers' compensation benefits for lost wages and her disability.

Tricia returned to work at a winery for approximately 7 years but was let go due to scheduling difficulties. Tricia thereafter worked as a substitute teacher and cook and has done some part-time office work. Tricia offered her 2020 income tax returns as well as current pay stubs. For purposes of the child support calculation, Tricia imputed gross monthly income for herself of $1,000, which is higher than her current earnings. Following the parties' separation, Tricia was unable to afford housing and moved in with her parents. At the time of trial, she and the children were still living with her parents and receiving "SNAP" benefits. The children were enrolled in Medicaid. Tricia still has problems sitting for long periods of time.

During the marriage, Mark farmed and drove a truck as an independent contractor. He was the primary source of the parties' marital income. At the time of trial, Mark was no longer farming, and his income was derived from trucking. The last joint tax return in evidence was for the year 2018 and Mark did not offer any separate tax returns for any subsequent years. He testified that he intended to get his tax returns "cleaned up" after the divorce proceeding concluded. On his proposed child support worksheet, Mark listed his gross monthly income as $9,477, and Tricia's as $433.

Tricia testified about her attempt to determine Mark's income by reviewing the deposits in his bank account. She determined that a 4-year average income for Mark was $93,640.57; or an average gross monthly income of $7,803.38. Tricia testified that Mark did not pay the temporary child or spousal support although his father made a lump sum payment on Mark's behalf at some point during the proceeding. At the time of trial, Mark owed approximately $4,700 in child support, and $2,900 in spousal support.

Tricia requested permanent alimony of $2,000 per month for 120 months. Tricia was paying $200 rent to her parents. She estimated that it would cost between $600 to $850 to rent a separate place for her and the children. She offered an exhibit of current and budgeted monthly expenses; the current expenses totaled $2,908, and the projected expenses (with her own residence) totaled $3,838.

The evidence at trial was uncontested that the parties owned numerous firearms on the date of separation and that these firearms were sold by Mark while the dissolution action was pending. Tricia took photographs and prepared a list of all of the firearms, of which there were nearly 100. She valued the firearms with the assistance of her attorney by using online sources and talking to gun dealers. The detailed list and photographs of the firearms were received into evidence without objection.

Mark has been a dealer and collector of guns in the past and is very familiar with guns. At trial he could not recall the number of guns he owned or the market value of the guns that he sold. He was vague in his testimony when reviewing the list of guns submitted by Tricia. Mark testified that he sold the guns when he received notice that a protection order had been sought by Tricia's mother against him, so he would not get in trouble. He sold them to an individual for $3,000 cash that he spent on his living expenses. The record shows that the ex parte protection order sought by Tricia's mother was dismissed.

The district court entered its decree of dissolution on September 26, 2023. As relevant to this appeal, the district court awarded Tricia alimony of $1,675 per month for 80 months, beginning October 1. The court found that Mark had intentionally hidden his income during these proceedings and had not been filing income tax returns since the parties separated. The court adopted the figure of $9,477 as Mark's monthly income (from Mark's proposed child support calculation), finding that Mark is capable of earning that amount. The court noted Tricia's 2020 earnings of $9,897.26. It adopted the figure of $1,000.56 per month as Tricia's income. The court did not hold Tricia to the standard of full-time minimum wage due to the injury she sustained at work which left her partially disabled.

With regard to the firearms, the district court found that the only evidence of their value was Tricia's testimony that she had looked up their value online and determined their proposed values with the assistance of her attorney. Mark listed a low value or no value for the majority of the firearms. The court noted Mark's admission that he sold all of the firearms after Tricia's mother sought a protection order against him. The court found that the sale was clearly for less than fair market value and as such, Mark dissipated those assets. The court relied on Tricia's calculations as to the value of the firearms. In the decree, the court valued some of the firearms for a total of $30,450. It did not place a value on other firearms listed in the joint property statement.

As a result of the division of property and debts, the district court entered an equalization judgment against Mark in favor of Tricia in the sum of $69,532.01, due within 120 days of the filing of the decree.

Tricia timely filed a motion to alter or amend the decree. As relevant to this appeal, Tricia sought alteration of the decree to include her proposed values for all of the firearms listed on the joint property statement. Following a hearing on the motion, the district court entered an amended decree of dissolution on November 16, 2023. The court granted the portion of Tricia's motion relative to the value of the firearms and it amended the property table to reflect all of Tricia's proposed values. Specifically, the court included an additional $47,665 worth of firearms in the marital estate. Thus, the total value of firearms the court determined to have been dissipated by Mark was $78,115. As a result, the court increased the equalization payment to $93,364.51, payable within 90 days of the filing of the amended decree.

Mark appeals.

ASSIGNMENTS OF ERROR

Mark assigns, restated, that the district court abused its discretion in its determination of the equalization payment as it relates to the valuation of the firearms, and in awarding Trisha alimony.

STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees. *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024). A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

ANALYSIS

*Valuation of Firearms/Equalization Payment.*

Mark argues that the district court abused its discretion in finding that he dissipated marital assets as a result of his sale of guns during the dissolution proceedings. In other words, he challenges the district court's adoption of Trisha's valuation of the guns in the amended decree and its corresponding increase in the equalization payment. Mark asserts that the guns were not sold for a selfish purpose, but were sold because Trisha's mother had a protection order sworn out against him and he believed that owning the guns could subject him to a felony charge. He further claims that he did not benefit from the sale of the guns except for the $3,000 payment.

"Dissipation of marital assets" is defined as one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown. *Anderson v. Anderson*, 27 Neb. App. 547, 934 N.W.2d 497 (2019) (citing *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009)). As a remedy, the courts have held that marital assets dissipated by a spouse for purposes unrelated to the marriage should be included in the marital estate. *Id*. Tricia had the initial burden of establishing that Mark dissipated the marital estate. See *Schnackel v. Schnackel*, 27 Neb. App. 789, 937 N.W.2d 234 (2019).

Mark claims that "the haste in which he consummated the sale supports his testimony that he sold the guns in order to be in compliance with the protection order" and not for any selfish purpose. Brief for appellant at 9. We first note that the ex parte protection order was not extended and was dismissed. Further, this purported reason is unrelated to the marriage and does not justify a "fire sale." And even if this was a justifiable reason for the sale, the real question is the price for which he sold the guns. Mark asserts that there was no evidence that he intentionally sold the guns at a low price to deprive Trisha of her fair share of their value.

Tricia argues that Mark has waived his argument regarding his dissipation of the assets because at the hearing on the motion to alter or amend, he did not argue that the inclusion of the market value of the firearms in the marital estate was inappropriate and admitted that there was "some evidence there to support how the Court ultimately ruled."

We need not determine whether Mark waived this argument. The record clearly establishes that Mark did not adduce any evidence of the market value of the guns that he hastily sold, while

Tricia did offer evidence of market value without objection. The list of firearms is over two pages in the property itemization attached to the amended decree of dissolution, consisting of nearly 80 described items. Clearly, the firearms were sold by Mark for a fraction of their value. Had the district court found that there were no guns in the parties' possession due to their sale or valued them at the $3,000 allegedly received by Mark, the result would have been to significantly reduce the marital estate. Under these circumstances, we find no error in the court's determination that Mark dissipated the marital estate, in the adoption of Tricia's value of the firearms in the amended decree, and in the award of the increased equalization payment contained in the amended decree.

*Alimony Award.*

Mark assigns that the district court abused its discretion in awarding Trisha alimony. He argues that it was unreasonable for the court to award her alimony for 5 years when she is presently capable of supporting herself.

Neb. Rev. Stat. § 42-365 (Reissue 2016) provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

In addition to the specific criteria listed in § 42-365, a court should consider the income and earning capacity of each party and the general equities before deciding whether to award alimony. *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016). The reasonable duration of an alimony award depends on the specific facts in a given case, often the amount of time required to allow the recipient spouse to support himself or herself. *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024). Alimony should not be used to equalize the incomes of the parties or to punish one of the parties; rather, the primary purpose of alimony is to assist the ex-spouse to secure his or her own means of support. *Id*. In reviewing an alimony award, an appellate court does not determine whether it would have awarded the same amount of alimony as did the trial court, but whether the trial court's award is untenable such as to deprive a party of a substantial right or just result with the ultimate criterion being reasonableness. *Id*.

Mark argues that the sole purpose of awarding Trisha alimony was to equalize the incomes between the parties. He asserts that Trisha has a bachelor's degree which "she apparently has not attempted to use in order to obtain full time employment in the human resources area." Brief for appellant at 11. Mark also claims that Trisha has been working "more or less" full-time since 2014 and is therefore not in need of additional time in order to secure her own means of support. Finally, Mark points to Trisha's testimony that she believes her income will increase as she obtains more substitute teaching positions.

In our de novo review of the record, we find no abuse of discretion by the trial court in the alimony award to Tricia. Tricia clearly interrupted her career for a period of years to care for the children and her return to full-time employment was impacted by a work-related injury. There is

simply no evidence that her earning capacity is such that she can support herself without some assistance for the foreseeable future.

CONCLUSION

Finding no abuse of discretion by the district court, we affirm its amended decree of dissolution in all respects.

AFFIRMED.